UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LATROY MAXWELL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-551 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

Latroy Maxwell has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Maxwell sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Maxwell has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Maxwell requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 19], GRANTS Mr. Maxwell's

motion for summary judgment, [Doc. 35], and DENIES AS MOOT Mr. Maxwell's request for oral argument. [Doc. 49].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't defeat summary judgment by merely alleging a factual dispute; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Maxwell's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 16], and he requests consolidated oral argument. [Doc. 45]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Latroy Maxwell alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility from around January 28 to February 28, 2021. He alleges that his cell had broken lights and a window covered with sheet metal, so was extremely dark, and had live wires draping from the ceiling. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Maxwell sued from prison, so the defendants aren't liable if they can show that Mr. Maxwell didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal grievance and two appeals to exhaust a claim. The parties agree as to the

3

substance of the written policy, which is thoroughly set out in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 4–6. The court adopts that discussion for purposes of this case.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Maxwell filed a grievance but didn't exhaust the appeals process. Their evidence includes the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 18-2], Mr. Maxwell's grievance history, [Doc. 18-3], and a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility. [Doc. 18-1]. They add Jeremy Blanchard's[2] complaint and grievance history as evidence in response to Mr. Maxwell's cross-motion for summary judgment. [Doc. 37-1, -2].

Mr. Gapski handles grievances and appeals as an offender grievance specialist at Miami Correctional Facility. He reviewed Mr. Maxwell's grievance records. He attests to the steps prescribed by the grievance policy and attests that that's the only official policy. He also attests to Mr. Maxwell's grievance history. He explains that Miami Correctional had no record of any grievance or appeal about Mr. Maxwell's cell during the time alleged in the complaint.

Mr. Gapski says that grievance specialists, the warden, and central office can't respond to a complaint's issue "[a]bsent any grievances or grievance

---

[2] Jeremy Blanchard is the plaintiff in a consolidated case, Blanchard v. Hyatte, No. 3:21-CV-160-RLM-MGG.

4

appeals being submitted in relation to an offender's claims." [Doc. 18-1 at 6]. He adds that "if [Mr. Maxwell] had submitted a formal grievance appeal of any kind, the Warden and/or Central Office would have received it and responded to it, in accordance with procedure." [Doc. 18-1 at 7].

The defendants' copy of Mr. Maxwell's grievance log and unrelated grievances don't include any grievances or appeals of cell conditions in restrictive housing.

*Mr. Maxwell's Account*

Mr. Maxwell asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 30-7 at 53–56], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the prison, [Doc. 30-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 30-2 to 30-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 30-6].

According to Mr. Maxwell, he was placed in restrictive housing in January and February 2020. His cell didn't have a working light and the sheet metal covered the window. Live wires hung from the ceiling. "After several days in that cell" he filed a grievance about the lack of light. [Doc. 30-7 at 54]. He received no response so filed a second grievance complaining that he received no response to the first grievance. The second grievance received no response. Mr. Maxwell

5

didn't know that he could appeal a non-response and he didn't know how to appeal a non-response; he understood that an appeal needed a grievance number, which was available only if the prisoner received a response.

Mr. Maxwell presents Mr. Gapski's testimony as evidence that the grievance process was unavailable. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Maxwell's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Maxwell also presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

DISCUSSION

Mr. Maxwell and the defendants move for summary judgment on the exhaustion defense. The governing law is set out thoroughly in the court's order on cross-motions for summary judgment in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, and the court adopts by reference discussion of the governing law.

Warden Hyatte and Deputy Warden Payne move for summary judgment, arguing that their records don't show any grievance or appeals, so Mr. Maxwell must not have exhausted administrative grievances. Mr. Maxwell disagrees, arguing that he's entitled to judgment on the exhaustion defense because the prison's lack of response made administrative remedies unavailable.

Approaching from Mr. Maxwell's perspective makes for a clearer picture.

Mr. Maxwell points to his actions and Miami Correctional Facility's inaction and silence to show that he exhausted available remedies. He says in his declaration that he never received a response to either grievance. This would show that administrative remedies weren't available because prison officials can't "exploit the exhaustion requirement through indefinite delay in responding to grievances." Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (citation and quotation omitted).

7

The grievance policy requires that prisoners appeal non-responses, and a prisoner must follow any prison rules that require administrative appeals Id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)). Mr. Maxwell didn't file any appeal, so he appears not to have fully exhausted administrative remedies. He argues, however, that Miami Correctional Facility's policy and practice made appealing a non-response impossible.

According to policy, a grievance specialists had to respond to a grievance within fifteen business days. If a prisoner didn't receive a response within twenty business days of when the grievance specialists received a grievance, a prisoner was to appeal as if a response had come. The warden was to respond to an appeal within ten business days of receiving the appeal. If he didn't respond by then, a prisoner could appeal as if a response had come. So Mr. Maxwell would exhaust administrative remedies according to the policy only if he appealed the lack of a response to a grievance and appealed the lack of a response to an appeal, if any.

This appeals process makes little sense. The policy requires that a prisoner who doesn't get a response to a grievance file an appeal, but a prisoner can file an appeal only by filing State Form 45473. A prisoner can't mark "disagree" on a form he never receives, so this is a dead end.

The defendants insist that Miami Correctional Facility recognizes only the official policy, contrary to what Mr. Gapski says. But even if the prison follows the written policy to a tee, appeals are unavailable for non-responses. The policy tells prisoners to appeal as if the grievance had been denied but doesn't say how

8

a prisoner is to get a copy of State Form 45473, much less how a prisoner in restrictive housing, like Mr. Maxwell was, is to get ahold of State Form 45473.

The same deficiencies apply to the second-level appeal. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on a form that they don't have and that might not even exist.

If Mr. Maxwell is believed, then he exhausted available remedies. He asserts that he received no response to his grievances. The policy demanded that he appeal those non-responses, yet defendants and the policy don't explain how a prisoner who receives no response can mark "disagree" on a form that is never received and that might not even exist. The policy puts a prisoner who receives no response from the warden in the impossible situation of needing to appeal the non-response by including the response that was never received. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Maxwell "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).

The defendants argue that Mr. Maxwell's evidence doesn't create a genuine issue about whether he filed any grievance. They characterize his declaration as self-serving, but a declaration's self-serving nature isn't reason to disregard it at

9

summary judgment. Hill v. Tangherlini, 724 F.3d 965, 967–968 (7th Cir. 2013) ("[T]he term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). The defendants insist that Mr. Maxwell should have submitted his grievances as documentary evidence, but they don't suggest how that would be possible given his claim that he sent grievances that never got responses. *See* Reid v. Marzano, No. 9:15-CV-761, 2017 U.S. Dist. LEXIS 38547, at *10 (N.D.N.Y. Mar. 17, 2017) ("It is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers."). They also take issue with the declaration's level of detail, proposing he should've said when he sent the grievances, to whom he gave them, and how he submitted them. Some of the ambiguity is reduced with other evidence, like Mr. Gapski's testimony that prisoners in restrictive housing would hand grievances to counselors in the unit. Mr. Gapski's testimony clarifies that Mr. Maxwell, like all prisoners in restrictive housing, submitted his grievances by handing them to prison staff. As for timing, Mr. Maxwell alleges only one month in restrictive housing. He submitted the first grievance several days after arriving and the second shortly after not receiving a response. That's not too vague for him to make a showing that he submitted two grievances.

Next, the defendants turn to the policy's requirement that prisoners notify grievance specialists of non-responses. The policy explains that if a prisoner doesn't receive a notice of receipt or a rejection form within ten days of submitting the grievance, the prisoner must tell the grievance specialist. Mr.

10

Maxwell's declaration defeats this argument because he alleges that he filed a second grievance complaining that his first was unanswered. The policy doesn't explain if a prisoner is supposed to notify grievance specialists of non-responses in a certain way or within a certain time, so there's no reason this second grievance wouldn't satisfy this requirement. Contrary to the defendants' assertions that "Mr. Maxwell provides no evidence that he complied or even attempted to comply with either of these requirements," his declaration is evidence that he tried to comply. He can't be blamed for the policy's unclear rules for non-responses.

The defendants try to hang their hat on Mr. Gapski's declaration, too. He asserted that "IDOC's computer records and hard copy files would indicate when an offender has filed a grievance, the response the offender received, how far through the grievance process the offender pursued his/her claim, and the ultimate resolution of the grievance." [Doc. 18-1 at 5]. The statement implies that the only reason a grievance or appeal doesn't get filed is that the prisoner didn't file it.

That's a faulty premise. The grievance specialists record a grievance only upon receipt, and Mr. Gapski testified at his deposition that grievance specialists have no way to track grievances between when a prisoner hands one to a prison officer and when the grievance is marked received. The defendants' evidence shows that Mr. Maxwell's grievances were never logged, but that doesn't account for anything that could've happened between his cell and the grievance office. As Judge Barker, in a similar case, explained:

11

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011).

The defendants also claim Mr. Maxwell had available remedies because he can't claim ignorance of the grievance policy. Prisoners are informed of the grievance policy during admission and orientation. Mr. Maxwell doesn't deny that, so he must've known the policy.

This argument misses the mark because Mr. Maxwell doesn't argue his ignorance of the policies made administrative remedies unavailable; rather, he claims he never received responses and couldn't appeal non-responses, so his grievances were dead ends.

The defendants raise a hearsay objection to statements made in Mr. Maxwell's statement of material facts. The objections aren't developed in the defendants' brief and the citations seem mistaken. The objections aren't articulated, so they're overruled. McCormick v. Goebel, No. 3:19-CV-608, 2023 U.S. Dist. LEXIS 21093, at *14 (N.D. Ind. Feb. 7, 2023) ("Failure to articulate why a statement is hearsay is sufficient to waive the objection.").

The defendants object to evidence about the Ombudsman as irrelevant because the Ombudsman doesn't work for the Department of Correction or have any power or role in the grievance process. Evidence is relevant if it tends to

12

make a fact of consequence more or less likely than it would be absent the evidence. Fed. R. Evid. 401. The Ombudsman evidence would tend to show that Miami Correctional Facility didn't ensure that every grievance got from the prisoner sending it to the grievance office, so the objection is overruled.

Warden Hyatte and Deputy Warden Payne's arguments for summary judgment in their favor depend on the lack of any record of Mr. Maxwell's grievances. For reasons already discussed, Mr. Maxwell has given evidence that he submitted grievances that received no answers and that were impossible to appeal. Their evidence doesn't controvert that, so it's undisputed that Mr. Maxwell exhausted available grievances even though the prison lacks records of the grievances.

In summary, the defendants' argument that the absence of evidence is the evidence of absence doesn't contradict Mr. Maxwell's evidence that administrative remedies weren't available. The defendants' evidence is consistent with Mr. Maxwell's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Maxwell. Administrative remedies weren't available to Mr. Maxwell, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr.

Maxwell's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Maxwell's motion for summary judgment without a Pavey hearing.

Mr. Maxwell requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

## CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Maxwell's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT. Mr. Maxwell's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court